1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

DARREL PATRICK WILLIS,

Plaintiff,

v.

NICK KISER, et al.,

Defendants.

11
12
13
14

CASE NO. 3:17-cv-05373-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: January 18, 2019

15
16

This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR

1, MJR 3, and MJR 4.

Plaintiff alleges that his Fourth Amendment and due process rights were violated when

defendants issued a warrant and arrested him for a community custody violation, even though

plaintiff's community custody sentence may have been completed. He also alleges that his

Eighth Amendment rights were violated when defendant Kiser failed to bring plaintiff's mental

health and blood pressure medications when booking plaintiff into jail, thereby causing plaintiff

to suffer painful withdrawals and panic attacks. Defendants Kiser and Perry have moved for

1    summary judgment.  This Court Recommends that summary judgment be granted in favor of

2    these two defendants.[1]

3        Plaintiff has failed to provide proof that defendant Perry personally participated in any of

4    the alleged acts against him. Also, plaintiff's due process claim would necessarily imply that his

5    underlying community custody sentence was invalid, and so is barred pursuant to *Heck v.*

6    *Humphrey*. In addition, plaintiff has failed to show that defendant Kiser acted unreasonably

7    under the circumstances when he was arrested and searched, and therefore that his Fourth

8    Amendment claim fails. Finally, plaintiff has failed to show that defendant Kiser knew of the

9    excessive risk to plaintiff's health that would result if he did not have his medications, and so

10   plaintiff has not shown that defendant Kiser acted with deliberate indifference.

11       For the above reasons, the Court recommends that the claims against defendants Perry

12   and Kiser be dismissed.

13                           **BACKGROUND and PROCEDURAL HISTORY**

14       Plaintiff's complaint alleges that defendants violated his Fourth Amendment, Eighth

15   Amendment, and due process rights when they arrested and sanctioned him for a community

16   custody violation even though, arguably, plaintiff's community custody sentence had expired.

17   Dkt. 23.

18       In April of 2012, plaintiff pled guilty to one count of taking a motor vehicle without the

19   owner's permission, two counts of second degree theft, and one count of possession of

20   methamphetamine. Dkt. 58-1, p. 2. He was sentenced to serve a 43 month term of confinement

21

22

23   [1] The Court notes that defendant Hergert is being represented by separate counsel from defendants Kiser and Perry, as such he is not addressed in this motion, and has filed his own motion for summary judgment noted for January 4, 2019. The Court will therefore make a determination as to the claims against defendant Hergert in a separate Report and Recommendation.

24

1   on each count and one year of community custody, and credited with 43 days of time served and

2   21 days of good time credit. *Id*. at pp. 5-6.

3       On August 21, 2014, based on earned early release credit, plaintiff was released from

4   confinement into community custody in lieu of early release. Dkt. 59-1, p. 3.The record

5   indicates, and the parties do not dispute, that had plaintiff not been released based on early

6   release credit, his full term of 43 months confinement would have expired in October of 2015.

7   *See* Dkt. 58-1, p. 5. However, the parties also agree that, pursuant to plaintiff's judgment and

8   sentence, which provided for one year of community custody, the DOC calculated the initial date

9   for completion of plaintiff's sentence as August 21, 2015 -- one year after his release into

10  community custody, but approximately two months before his full term of confinement would

11  have ended. *See* Dkt. 57, p. 2.

12      While plaintiff was serving his community custody sentence, the Washington Supreme

13  Court issued an opinion in *State v. Bruch*, 182 Wash.2d 854 (2015), which affected the way the

14  Department of Corrections ("DOC") calculated community custody in lieu of early release. The

15  Washington Supreme Court in *Bruch* stated that release of prisoners on community custody "in

16  lieu of early release is the result of RCW 9.94A.729(5), which provides the DOC authority to

17  transfer a portion of a confinement time into community custody in lieu of early release. *It is not

18  the result of the trial court's community custody term* imposed under RCW 9.94A.701." *Id*. at

19  863. (emphasis added). Pursuant to the *Bruch* decision, and because plaintiff was on community

20  custody in lieu of early release rather than community custody pursuant to his judgment and

21  sentence, the end of plaintiff's community custody in lieu of early release was recalculated to

22  October 13, 2015 -- the end of plaintiff's original term of confinement. Dkt. 59, Kiser Decl., ¶

23  20; Dkt. 59-1, p. 8. Defendant Kiser was informed of this change in July of 2015. Dkt. 59, Kiser

24

REPORT AND RECOMMENDATION - 3

Decl., ¶ 20. It is disputed whether plaintiff was made aware of this change. Dkt. 23, p. 4 (plaintiff alleges that he was not told); Dkt. 59, Kiser Decl., ¶¶ 22-23, 26 (defendant Kiser stating that he informed plaintiff that he was still required to report both in September and October).

Though plaintiff does not dispute that the DOC recalculated and amended the end date of his community custody in lieu of early release, he does dispute whether this recalculation accurately reflected plaintiff's community custody sentence. *See* Dkt. 69, pp. 5-6. He argues that, because he was released into community custody on August 21, 2014, and because his judgment and sentence provided for a fixed term of one year of community custody, his community custody should have ended on August 21, 2015. *Id.* He thus disputes that he was on community custody in September and October of 2015, as defendants allege. *Id.*

The conditions of plaintiff's community custody sentence required him "to report and be available for contact with the assigned CCO as directed until instructed to no longer report, or a court order is issued closing the case." Dkt. 59-1, p. 18. The record indicates that, with three exceptions in February, July, and August of 2015, plaintiff diligently reported to defendant Kiser on a monthly basis prior to September of 2015. *See* Dkt. 59-1, pp. 5-12.

When plaintiff reported to defendant Kiser in August of 2015, defendant Kiser instructed plaintiff to report next on September 3, 2015. Dkt. 59-1, p. 8. However, plaintiff failed to report on that date, and so defendant Kiser obtained a warrant for plaintiff's arrest. *Id.* Plaintiff was arrested on September 25, 2015, and sanctioned for failure to report as instructed. *Id.* at p. 7. After plaintiff was released, he was again instructed to report to defendant Kaiser on October 13, 2018. *Id.* Plaintiff again failed to report, and defendant Kaiser obtained another warrant for plaintiff's arrest. *Id.* When defendant Kiser went to plaintiff's residence to serve the warrant, he found plaintiff was not at home, and plaintiff's building manager stated that plaintiff had not

1   returned for many days. *Id*. Plaintiff was not apprehended again until May 30, 2016. *Id*. at p. 6.

2   He was returned to custody, until he was released from jail on June 11, 2016. Dkt. 59, Kiser

3   Decl, ¶ 29.

4           Plaintiff filed this action in October of 2017. Dkt. 23. He argues that his community

5   custody should have ended in August of 2015, rather than October of 2015 as calculated by

6   defendants, because he was released into community custody in August of 2014 and his

7   judgment provided for a fixed term of one year of community custody. *Id*. He alleges that his due

8   process rights were violated because he was arrested and sanctioned for community custody

9   violations in September and October of 2015, though his community custody had allegedly

10  ended in August of 2015. *Id*. He also argues that his Fourth Amendment rights were violated

11  when he was unlawfully arrested and when his residence was searched pursuant to his arrest. *Id*.

12  Finally, plaintiff alleges that his Eighth Amendment rights were violated when defendant Kiser

13  failed to bring his mental health and blood pressure medications with plaintiff when he was

14  booked into jail pursuant to those arrests. *Id*. He alleges that these constitutional violations

15  caused him to drop out of school, lose his apartment and all his possessions, and eventually

16  become re-incarcerated. *Id*. Plaintiff requests: $1,100 for the security deposit on his apartment;

17  $4,500 for the lost contents of his apartment; $7,400 in missed SSI payments; $11,700 in student

18  loans he must reimburse; other compensatory damages in the combined amount of $157,500; and

19  punitive damages in the amount of $250,000. *Id*.

20          Defendants Perry and Kiser have now filed a motion for summary judgment, arguing that

21  plaintiff's due process claims are barred pursuant to *Heck v. Humphrey*. Dkt. 57. They also argue

22  that defendant Kiser is entitled to qualified immunity for the alleged Fourth and Eighth

23  Amendment violations because his actions in arresting plaintiff did not violate clearly established

24

1   law, and that he did not know about the allegedly excessive risk to plaintiff's health when he did

2   not bring plaintiff's medication. *Id*.

3                              **STANDARD OF REVIEW**

4           The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

5   over the material facts before the court and the moving party is entitled to judgment as a matter

6   of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

7   *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990).  The moving party is entitled

8   to summary judgment if the evidence produced by the parties permits only one conclusion.

9   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  To determine if summary judgment

10  is appropriate, the court must consider whether particular facts are material and whether there is

11  a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c).  The

12  materiality of a given fact is determined by the required elements of the substantive law under

13  which the claims are brought. *Anderson*, 477 U.S. at 248.  Factual disputes that do not affect the

14  outcome of the suit under the governing law will not be considered.   *Id.*  Where there is a

15  complete failure of proof concerning an essential element of the non-moving party's case on

16  which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and

17  the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

18  317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented

19  through the prism of the substantive evidentiary burden"). However, when presented with a

20  motion for summary judgment, the court shall review the pleadings and evidence in the light

21  most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro

22  se complaint will be liberally construed  . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.

23  1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

24

1       Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

2   the motion must do more than simply show that there is some metaphysical doubt as to the

3   material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The

4   opposing party cannot rest solely on his pleadings but must produce significant, probative

5   evidence in the form of affidavits, and/or admissible discovery material that would allow a

6   reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50.

7   **DISCUSSION**

8   **I.**    **Personal Participation of Defendant Perry**

9       To state a claim under 42 U.S.C. § 1983, plaintiff must allege facts showing how a

10   defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v.*

11   *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold*, 637 F.2d at 1355. A person subjects another

12   to a deprivation of a constitutional right when committing an affirmative act, participating in

13   another's affirmative act, or failing to perform an act which is legally required. *Johnson v. Duffy*,

14   588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are

15   insufficient to state a claim for relief. *Leer*, 844 F.2d at 633. Further, a § 1983 suit cannot be

16   based on vicarious liability alone, but must allege the defendant's own conduct violated the

17   plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989).

18       Here, plaintiff has failed to show that defendant Perry personally participated in any of

19   plaintiff's alleged violations. Plaintiff only seeks monetary damages from defendant Perry,

20   alleging that defendant Perry "authorized the warrant necessary for [defendant] Kiser and

21   [defendant] Hergert to willfully violate [plaintiff's] 4th Amendment right . . . ." Dkt. 23, p. 4.

22   The Court infers that plaintiff is referring to either the warrant issued for plaintiff's arrest on

23   September 18, 2015 (*see* Dkt. 59-1, p. 8) or the warrant issued for plaintiff's arrest on October

24

23, 2015 (*see* Dkt. 59-1, p. 7). However, defendants have now provided evidence that defendant Perry was not employed as a Community Corrections Officer with the authority to issue warrants for arrest until April of 2016 – well after plaintiff's arrests. Dkt. 61. Plaintiff does not dispute this evidence, and he did not address defendant Perry's personal participation defense at all in his response. *See* Dkt. 69. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, plaintiff's allegation that defendant Perry issued the warrant for his arrest is clearly contradicted by evidence that defendant Perry was not employed in a capacity to issue the warrant at the time of plaintiff's arrest. Because the record clearly contradicts plaintiff's recitation of defendant Perry's involvement, and plaintiff has failed to produce evidence that defendant Perry personally participated in any alleged constitutional violation, the Court recommends that defendant Perry be dismissed from the action.

## II.    Claims Barred Pursuant to *Heck v. Humphrey*

Initially, defendants Perry and Kiser have raised *Heck v. Humphrey* only as to plaintiff's due process claims. They have not addressed *Heck* as it would apply to plaintiff's Fourth or Eighth Amendment claims, and so the Court will not address those claims in the following *Heck* analysis.

### A.   *Heck v. Humphrey*

A civil rights complaint under § 1983 cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). A plaintiff may

1   only recover under § 1983 for an allegedly unconstitutional conviction or sentence if he can

2   prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

3   order, declared invalid by a state tribunal authorized to make such a determination, or called into

4   question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. The

5   § 1983 action "is barred (absent prior invalidation) -- no matter the relief sought (damages or

6   equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or

7   internal prison proceedings) -- if success in that action would necessarily demonstrate the

8   invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).  To

9   obtain federal judicial review of a state conviction or sentence, a party must file a petition for a

10  writ of habeas corpus pursuant to 28 U.S.C. § 2254 and must first exhaust his state judicial

11  remedies.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

12        In addition to direct challenges to a conviction or sentence, challenges that would

13  necessarily imply the invalidity of the conditions of supervised post-conviction release (such as

14  challenges to the length of community custody), or challenges that implicate hearings regarding

15  conditions of release, are also barred under *Heck. See Heilbrun v. City of Portland*, 698 F. App'x

16  553 (9th Cir. 2017) ("To the extent that [the prisoner] alleged that he was wrongfully convicted

17  of parole violations, the district court properly dismissed these claims as *Heck*-barred because

18  success on these claims would necessarily imply the invalidity of [the prisoner's] conviction and

19  sentence") (citing *Heck*, 512 U.S. at 486-87); *Thornton v. Brown*, 757 F.3d 834, 842 (9th Cir.

20  2013) (noting that a challenge to the fact or duration of parole is cognizable in habeas, rather

21  than § 1983 proceedings, because "parole is simply a less onerous form of imprisonment and the

22  parolee is still considered a prisoner"); *Czapla v. Reed*, 2011 WL 675761, at *2 (W.D. Wash.

23  Jan. 19, 2011), *report and recommendation adopted*, 2011 WL 675727 (W.D. Wash. Feb. 14,

24

REPORT AND RECOMMENDATION - 9

1    2011) (finding that "a decision in [a prisoner's] favor on his claims regarding the conditions of

2    his community custody, and *the manner in which his community custody was administered by*

3    *defendants*, would necessarily call into question the lawfulness of the term of confinement

4    imposed as a sanction for plaintiff's alleged violation of the conditions of his community

5    custody") (emphasis added).

6         *1. Evidence*

7         It is undisputed that, based on early release credit, plaintiff was released from

8    confinement into community custody on August 21, 2014. Dkt. 59-1, p. 3. Had plaintiff served

9    his full 43-month sentence in confinement, he would have been released in October of 2015. *See*

10   Dkt. 58-1, p. 5 (judgment and sentence noting a total sentence of 43 months confinement and one

11   year of community custody, minus 43 days for time served and 21 days for good time credit,

12   entered on April 20, 2012). However, it is also undisputed that, pursuant to plaintiff's judgment

13   and sentence providing for one year in community custody, the DOC originally calculated

14   plaintiff's end-date for his community custody as August 21, 2015 -- one year after he was

15   released into community custody. Dkt. 58-1, p. 18.

16         Defendants have provided evidence that, on or about July 22, 2015, the DOC changed the

17   end-date of plaintiff's community custody. Defendants have explained in their motion that the

18   Washington Supreme Court entered an opinion affecting how DOC calculates release dates from

19   community custody when a prisoner has been released to community custody based on early

20   release credit. Dkt. 57, p. 4 (citing *State v. Bruch*, 182 Wn.2d 854 (2015)). Thus, defendants have

21   provided evidence that, "Per Bruch Decision," plaintiff's new release date was adjusted to

22   coincide with the end of his full term of confinement -- namely October 13, 2015. *See* Dkt. 59-1,

23   p. 8. Plaintiff does not provide any evidence disputing that the DOC did, in fact, change the end

24

1   date of his community custody. However, plaintiff does dispute whether the DOC properly

2   calculated that end date, providing legal argument that he was actually sentenced to a fixed term

3   of 12 months in community custody. *See* Dkt. 69, pp. 5-6. Because plaintiff was released into

4   community custody on August 21, 2014, plaintiff argues that his community custody should

5   have expired on August 21, 2015 and was unlawfully extended by DOC. *See* Dkt. 69, pp. 5-6.

6       It is undisputed that, on September 3, 2015, plaintiff did not report to defendant Kiser as

7   instructed. Dkt. 59, Kiser Decl., ¶ 23. It is also undisputed that on September 25, 2015,

8   defendants Kiser and Hergert served a warrant for plaintiff's arrest for "escape from community

9   custody." Dkt. 23, p. 3; Dkt. 59, Kiser Decl., ¶ 24. Defendants have provided evidence that

10  plaintiff admitted to smoking methamphetamine while released. *Id*. Defendants have also

11  provided evidence that a small bag containing "two crystal-like substances" was found in

12  plaintiff's home. *Id*. It is undisputed that plaintiff entered into a negotiated sanction for the

13  community custody violation and signed an agreement admitting he committed the violation --

14  namely failing to report since September 3, 2015, and "waiv[ing] the right to a formal hearing

15  and choos[ing] to enter into the following agreed sanction based on [his] admission of guilt to

16  these violations . . . ." Dkt. 59-1, p. 26. However, plaintiff has provided evidence in his sworn

17  complaint that defendants never disclosed that his community custody had been extended. Dkt.

18  23, p. 4. Indeed, defendants have provided evidence that, at plaintiff's proceeding regarding this

19  violation, he stated that the reason he failed to report was because "[he] was under the

20  impression that [he] was off [his] community custody . . . ." Dkt. 60-1, p. 10. Plaintiff also

21  testified that he failed to contact his community custody officer before failing to report. *Id*. The

22  record reflects that plaintiff confirmed in the hearing that he entered the negotiated sanction

23  willingly and had not been coerced. *Id*. at p. 9. However, plaintiff seems to imply he did not

24

REPORT AND RECOMMENDATION - 11

1  enter into the negotiated sanction willingly because defendants failed to disclose evidence or to

2  allow plaintiff to cross-examine witnesses. Dkt. 23, p. 4. He argues this constitutes a violation of

3  his due process because he was arrested and sanctioned even though he had already completed

4  his term of community custody.

5       Defendants have provided evidence that plaintiff was instructed to report back to

6  defendant Kiser on October 13, 2015. Dkt. 59, Kiser Decl. ¶ 26. However, it is undisputed that

7  plaintiff did not report as instructed on October 13, 2015. Dkt. 59, Kiser Decl., ¶ 26. It is also

8  undisputed that another warrant for plaintiff's arrest was issued on or about October 23, 2015.

9  Dkt. 23, p. 4; Dkt. 59, Kiser Decl., ¶ 26. Finally, it is undisputed that plaintiff was eventually

10  arrested in May of 2016 under the above noted warrant for failing to report. Dkt. 23, pp. 4-5;

11  Dkt. 59, Kiser Decl., ¶ 28. Plaintiff entered into a second negotiated sanction after being arrested.

12  Dkt. 23, pp. 4-5; Dkt. 59, Kiser Decl., ¶ 29. Defendants have provided evidence that plaintiff

13  stated that he agreed to plead guilty to the charged community custody violations and that he had

14  not been threatened or coerced into pleading guilty. Dkt. 60-1, p. 4. However, plaintiff alleges

15  and has provided evidence that defendants failed to disclose the evidence against plaintiff and

16  failed to allow him to cross examine defendant Kiser. Dkt. 23, p. 5. Plaintiff again argues that

17  this was a violation of his due process rights because he had already completed his term of

18  community custody.

19       The parties have provided evidence that plaintiff was subsequently charged with

20  possession of a controlled substance predicated on the "two crystal-like substances" found in

21  plaintiff's home during the execution of the September 25, 2015 arrest warrant. Dkt. 23, p. 5;

22  Dkt. 60-1, p. 13. It is undisputed that the charge was later dismissed. Dkt. 23, pp. 8-11. Plaintiff

23  has argued that the dismissal of the charges supports his due process claims because it indicates

24

that a state trial court has already determined that his September 2015 search and arrest were violations of due process. Dkt. 23, p. 5.

 2.  *Analysis*

A finding in plaintiff's favor would necessarily imply the invalidity of his community custody. Plaintiff argues that, because his community custody sentence had already been completed, his due process rights were violated when he was arrested and sanctioned for community custody violations. A finding that plaintiff's right to due process has been violated would necessarily be a finding that plaintiff was no longer on community custody as of the date of his violation. As such, a ruling in plaintiff's favor would necessarily be a ruling that defendants unlawfully extended his term of community custody. Such a ruling would thus necessarily imply that plaintiff's underlying community custody sentence is invalid. As noted above, the Ninth Circuit has found that prisoners may not recover for allegedly unlawfully parole sanctions without first demonstrating the parole itself was invalid. *See Heilburn*, 698 F. App'x at 553. Because a finding in plaintiff's favor would necessarily imply the invalidity of his underlying community custody sentence, and because plaintiff has not already invalidated his underlying community custody sentence through either state or federal post-conviction relief proceedings, plaintiff cannot recover for his due process claims in this § 1983 proceeding.

Plaintiff argues that his underlying community custody sentence has already been invalidated because a criminal charge related to the contraband found in plaintiff's residence on September 25, 2015, was later dropped. Initially, the Court does not find that the dismissal of the controlled substances charge against plaintiff is a clear demonstration that plaintiff's due process rights were violated during his negotiated sanction, or that a state court has already invalidated plaintiff's underlying community custody sentence. The state prosecutor's motion for dismissal

1    of the new criminal charge stated that plaintiff's date for release from community custody was

2    originally set for August 21, 2015. Dkt. 23, p. 9. The prosecutor noted that the state interpreted

3    the Washington Supreme Court decision in *State v. Bruch* as a pronouncement that "the period of

4    earned early release time that a [prisoner] had earned [should be treated as] additional

5    community custody." Dkt. 23, p. 9. The prosecutor also noted that the Washington Legislature

6    amended its community custody statute, and plaintiff's community custody had been extended

7    by 51 days based on the Washington Supreme Court's decision. *Id*. However, the prosecutor's

8    motion to dismiss the charges indicates that the prosecutor made the decision to dismiss

9    plaintiff's charges because "[t]he State feels that the statute can be read one way while [plaintiff]

10   feels that it can be read another way." *Id*. Plaintiff has included an email exchange between the

11   deputy prosecutor for plaintiff's controlled substances charge and plaintiff's defense counsel.

12   Dkt. 70, pp. 6-10. Throughout that exchange, both attorneys argue the impact of the *Bruch*

13   decision on plaintiff's then pending criminal charges. *Id*. However, in moving to dismiss

14   plaintiff's charges, the prosecutor did not concede plaintiff's position, but rather stated that,

15   "[r]ather than fight a motion regarding a DOC practice that existed for only a brief moment in

16   time and which was the basis for the search in this case, the State moves to dismiss with

17   prejudice." Dkt. 23, pp. 9-10. The order granting dismissal of plaintiff's charge also does not

18   explain the state trial court's reasoning, but states "the Court finds good cause exists and the best

19   interests of justice will be served by the dismissal of this matter." *Id*. at p. 11. Thus, the dismissal

20   of plaintiff's charge of possession of methamphetamine does not, in itself, show that plaintiff's

21   community custody sentence has already been invalidated.   If anything, it demonstrates that the

22   parties apparently disagreed on the import of the change in the law, and agreed to resolve the

23   dispute by noting that plaintiff had otherwise been compliant with his community custody

24

1   conditions and dismissing the criminal charges related to the violation. *See id.* at pp. 9-10 (noting

2   that the parties disagree on the effect of the change in law, and that the DOC did not strongly

3   believe that plaintiff should be prosecuted).

4         Thus, the Court finds that plaintiff has failed to show that the underlying sentence and the

5   extension of his community custody has already been reversed on direct appeal, expunged by

6   executive order, declared invalid by a state tribunal authorized to make such a determination, or

7   called into question by a federal court's issuance of a writ of habeas corpus. *See Heck*, 512 U.S.

8   at 486-87. Therefore, the Court finds that plaintiff's due process claims are currently barred

9   pursuant to *Heck v. Humphrey*.

10         B.  *Nonnette v. Small*

11         In order for a prisoner to invalidate a conviction or sentence through either state or

12   federal post-conviction relief, and thus overcome the bar pursuant to *Heck v. Humphrey*, the

13   prisoner must be in custody pursuant to the conviction or sentence he or she is challenging. *See*

14   28 U.S.C. § 2254(a); Wash. RAP 16.4. Thus, if, as here, a prisoner is no longer restrained

15   pursuant to a conviction or sentence he or she is challenging, habeas is unavailable and *Heck*

16   cannot be overcome. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *Guerrero v. Gates*, 442

17   F.3d. 697, 704-05 (9th Cir. 2006). However, the Ninth Circuit has provided a narrow exception.

18         In *Nonnette v. Small*, the Ninth Circuit concluded that *Heck* will not bar a § 1983 claim

19   challenging an underlying sentence when a prisoner has completed the challenged sentence. 31

20   F.3d 872, 875-76 (9th Cir. 2002). The Ninth Circuit found it would not serve the ends of justice

21   to require a prisoner to invalidate the sentence in a separate proceeding because, having

22   completed the sentence, the prisoner no longer had the ability to bring a separate habeas petition

23   and invalidate the sentence. 31 F.3d at 875-76. However, the Ninth Circuit has since clarified

24

1    that "*Nonnette* was founded on the unfairness of barring a plaintiff's potentially legitimate

2    constitutional claims when the individual immediately pursued relief after the incident giving

3    rise to those claims and could not seek habeas relief only because of the shortness of his prison

4    sentence." *Guerrero*, 442 F.3d at 705. In *Guerrero*, the Ninth Circuit noted that the prisoner had

5    failed to raise the challenge to his underlying conviction until he filed his § 1983 claim nearly

6    three years after the alleged incident, and that such a "'self-imposed' failure to seek habeas relief

7    was not a ground for allowing [the prisoner] to escape the *Heck* bar." *Lyall v. City of Los*

8    *Angeles*, 807 F.3d 1178, 1192 (9th Cir. 2015). Further, "*Heck* bars a § 1983 action that would

9    imply the invalidity of a prior conviction if the plaintiff could have sought invalidation of the

10   underlying conviction via direct appeal or state post-conviction relief, but did not do so." *Martin*

11   *v. City of Boise*, 902 F.3d 1031, 1044 (9th Cir. 2018) (citing *Nonnette*, 316 F.3d at 1192 & n.12).

12            Though not addressed by plaintiff, defendants argue that the *Nonnette* exception to a bar

13   pursuant to *Heck v. Humphrey* is not available to plaintiff because plaintiff had ample

14   opportunity to file a habeas petition or personal restraint petition during his allegedly over-length

15   community custody sentence. The Court agrees. Plaintiff is challenging his allegedly

16   miscalculated community custody sentence. Though plaintiff was held in confinement for very

17   short periods of time when he was arrested and sanctioned for failure to report, he was

18   nonetheless still restrained under the allegedly miscalculated community custody sentence

19   starting in August of 2014. Indeed, defendants have provided evidence that they believed

20   plaintiff was still restrained under his community custody sentence until April 21, 2016. Dkt. 59-

21   1, p. 6 (OMNI entry indicating second amendment to plaintiff's release date, tolling plaintiff's

22   release date from October 13, 2015, to April 21, 2016 due to his failure to report). Even after

23   plaintiff was arrested in May of 2016 for community custody violations, plaintiff was not

24

REPORT AND RECOMMENDATION - 16

1    released until June 11, 2016. Dkt. 59, ¶ 29. Further, according to defendant Kiser, the DOC did

2    not consider plaintiff to have completed his sentence until June 28, 2016. *Id*. at ¶ 30. Thus,

3    plaintiff had ample time while he was serving his community custody sentence to file a personal

4    restraint petition or a habeas petition challenging his allegedly unlawful community custody

5    sentence. However, despite plaintiff arguing he believes he was free from community custody in

6    August of 2015, plaintiff has provided nothing to date to suggest he attempted to pursue any

7    relief from his sentence any time between the time he was arrested for violating his allegedly

8    miscalculated community custody and the filing of this action in October of 2017.

9        This scenario is not akin to the prisoner in *Nonnette*. In that case, the Ninth Circuit

10   allowed a prisoner to file a § 1983 action without first invalidating his underlying sentence

11   because the prisoner immediately sought relief after his alleged constitutional violations and

12   could no longer seek habeas relief only because of the brevity of his unlawful restraint. *See*

13   *Guerrero*, 442 F.3d at 705. Rather, this case is closer to *Guerrero*, in which the Ninth Circuit

14   found that a plaintiff's § 1983 claims were barred by *Heck* because the plaintiff allowed nearly

15   three years to pass before filing his action, did not seek any other post-conviction relief during

16   that time, and thus, unlike in *Nonnette*, the plaintiff's inability to file a habeas petitioin was "self-

17   imposed." *Id*. Here, plaintiff has failed to invalidate his underlying sentence through the habeas

18   process and that remedy is now unavailable. However, plaintiff did not attempt to acquire any

19   other remedy until filing this action, either when he was being restrained on community custody,

20   when he was released, or when he was reincarcerated.

21       Thus, plaintiff's due process claims are barred pursuant to *Heck v. Humphrey* and

22   plaintiff is not entitled to the exception provided pursuant to *Nonnette v. Small*. Therefore, the

23   Court recommends plaintiff's due process claims be dismissed.

24

1    *C. Waiver of Due Process*

2        Defendants have also argued that plaintiff waived his due process rights when he agreed

3    to the negotiated sanctions. However, the Court has already determined that plaintiff's due

4    process claims are barred pursuant to *Heck v. Humphrey*. Therefore, the Court declines to make a

5    determination as to whether plaintiff waived his due process rights at this time.

6    **III.    Qualified Immunity**

7        A defendant is entitled to qualified immunity if his or her conduct "does not violate

8    clearly established statutory or constitutional rights of which a reasonable person would have

9    known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The central purpose of qualified

10   immunity is to balance two interests: "the need to hold public officials accountable when they

11   exercise power irresponsibly and the need to shield officials from harassment, distraction, and

12   liability when they perform their duties reasonably." *Tibbetts v. Kulongowski*, 567 F.3d 529, 535

13   (9th Cir. 2009).

14       In determining whether an official is entitled to qualified immunity, the Court asks two

15   questions. "First, the Court must ask whether '[t]aken in the light most favorable to the party

16   asserting the injury, the facts alleged show the officer's conduct violated a constitutional

17   right[.]'" *Skoog v. C'nty of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006) (quoting *Saucier v.

18   Katz*, 533 U.S. 194, 201 (2001)). Second, the Court asks whether the defendant's conduct

19   violated "clearly established statutory or constitutional rights of which a reasonable person

20   would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Subsumed into this second

21   inquiry is another determination: "whether the officer could have believed, 'reasonably but

22   mistakenly . . . that his or her conduct did not violate a clearly established constitutional right.'"

23   *Skoog*, 469 F.3d at 1229. (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.

24

1    2001)). The Court need not answer these questions in the order presented above – the Court may

2    grant qualified immunity at any point it answers any of those questions in the negative. *See*, *e.g.*,

3    *Tibbetts*, 567 F.3d at 535-39 (bypassing the first inquiry and granting qualified immunity based

4    on the second).

5         A.   *Fourth Amendment As Applied to Parolees*

6         The Western District of Washington has held that a prisoner on community custody "is

7    the functional equivalent of a parolee." *Nash v. Robinson*, 2010 WL 4852199, at *8 (W.D. Wash.

8    Nov. 1, 2010) (citing *Sherman v. Reilly*, 364 F. Supp. 2d 1216, 1218-19 (D. Or. 2005)). As such,

9    "[a] warrant for his arrest for violation of [his] conditions of release is not subject to normal

10   Fourth Amendment considerations." *Id*. "Revocation [of parole] deprives an individual, not of

11   the absolute liberty to which every citizen is entitled, but only of the constitutional liberty

12   properly dependent on observance of special parole restrictions." *Morrisey v. Brewer*, 408 U.S.

13   471, 480 (1972). Whether a search or seizure of somebody on community custody was

14   "reasonable," and therefore permissible under the Fourth Amendment, requires the Court to

15   assess, "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the

16   other, the degree to which it is needed for the promotion of legitimate governmental interests."

17   *United States v. Knights*, 534 U.S. 112, 118-19 (2001). Thus, taking those considerations into

18   account, an officer "requires no more than reasonable suspicion to conduct" a search or seizure

19   of a parolee or probationer. *Knights*, 534 U.S. at 121.

20        Further, "officers are entitled to qualified immunity if they act reasonably under the

21   circumstances, even if [their] actions result in a constitutional violation." *Ramirez v. Butte-Silver*

22   *Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002), *affirmed by Groh v. Ramirez*, 540 U.S. 551

23   (2004). "Officers will not be liable for mere mistakes in judgment, whether [their] mistake is one

24

1    of fact or one of law." *Butz v. Economous*, 483 U.S. 478, 507 (1978). Indeed, qualified immunity

2    affords officers "'ample room for mistaken judgments by protecting all but the plainly

3    incompetent or those who knowingly violate the law.'" *Liberal v. Estrada*, 632 F.3d 1064, 1077

4    (9th Cir. 2011) (quoting *Rodis v. City of San Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009)).

5        *B.   Unreasonable Seizure*

6        Plaintiff first argues that his Fourth Amendment rights were violated when he was

7    arrested for a community custody violation after his community custody had already expired.

8    Initially, the Court need not determine whether plaintiff was actually on community custody

9    when the search took place. Rather, assuming for purposes of this motion that plaintiff's

10   community custody term had, in fact, expired, the Court must determine whether defendant

11   Kiser's actions were nonetheless reasonable in light of the circumstances, and whether such

12   reasonableness entitles him to qualified immunity.

13       Defendants have provided evidence that plaintiff's judgment and sentence included a

14   provision that he "comply with the instructions, rules[,] and regulations of DOC for the conduct

15   of the Defendant during the period of community custody." Dkt. 58-1, p. 24. Defendants have

16   also provided evidence that plaintiff's conditions of release include a provision that "[i]f [he is]

17   transferred to Community Custody and fail[s] to report as ordered, [he] understand[s] that escape

18   charges may be filed against [him]." Dkt. 59-1, p. 3. Plaintiff signed a documents entitled

19   "conditions, requirements, and instructions" regarding his release, acknowledging that he was

20   "required to report and be available for contact with the assigned CCO as directed until

21   *instructed to no longer report, or a court order is issued closing the case*." Dkt. 59-1, p. 18

22   (emphasis added).

23

24

REPORT AND RECOMMENDATION - 20

1          Defendant Kiser was the person tasked with supervising plaintiff when plaintiff was

2    placed on community custody. Dkt. 59, Kiser Decl., ¶ 3. He states that, when supervising

3    individuals on community custody, he utilizes their "Judgement and Sentence as well as the

4    [DOC's] OMNI database," along with other employees and agencies to ensure adequate

5    supervision. *Id.* at ¶ 2. Defendant Kiser also states that, on or about July 22, 2015, he was

6    informed by another DOC employee that plaintiff's community custody sentence had been

7    recalculated. *Id.* at ¶ 20. Specifically, defendant Kiser states that he was informed that plaintiff's

8    sentence had been extended from August 23, 2015 to October 13, 2015. *Id.* Defendant Kiser has

9    provided a notation in plaintiff's OMNI file indicating that his sentence was, in fact, amended in

10   the DOC system "Per Bruch Decision." Dkt. 59-1, p. 7.

11         Defendant Kiser states that he instructed plaintiff to report on September 3, 2015. Dkt.

12   59, Kiser Decl., ¶ 22. It is undisputed that plaintiff failed to report on September 3, 2015. Dkt.

13   23, p. 3; Dkt. 59, Kiser Decl., ¶ 24. It is further undisputed that a warrant was issued for

14   plaintiff's failure to report and he was arrested on September 25, 2015. *Id.* Defendant Kiser has

15   provided evidence that he believed plaintiff was in violation of his community custody when

16   defendant Kiser requested the arrest warrant and affected the arrest. Dkt. 59, Kiser Decl., ¶¶ 20,

17   23-24. The only argument plaintiff raises regarding whether defendant Kiser knew plaintiff was

18   allegedly no longer on community custody is that he "ignored [plaintiff's] explanations of how

19   and why [he] was no longer on probation" during the arrest. Dkt. 23, p. 4.

20         Here, the Court concludes it was objectively reasonable for defendant Kiser to rely on the

21   information he used when arresting plaintiff. Initially, defendant Kiser was the officer assigned

22   to oversee plaintiff's community custody and so was familiar with plaintiff and the terms of his

23   custody. One of the terms of plaintiff's custody was to report to DOC when instructed.

24

1    Defendant Kiser was told by another member of DOC staff in July of 2015 that plaintiff's

2    community custody had been amended, and would be completed in October of 2015 rather than

3    August of 2015. Pursuant to this, after plaintiff reported to defendant Kiser in August of 2015,

4    defendant Kiser instructed plaintiff to report again in September of 2015. When plaintiff failed to

5    report, defendant Kiser sought and received an arrest warrant for the failure to report, which he

6    executed on plaintiff pursuant to plaintiff's conditions of community custody. The Court finds

7    that reliance on information from the DOC's own database was objectively reasonable in

8    determining plaintiff was still on community custody. *See Torres v. C'nty of Madera*, 2011 WL

9    6141080, at *7-*10 (E.D. Cal. Dec. 9, 2011) (finding that an officer who relied on personal

10   experience, case file notes, and state databases in mistakenly determining a prisoner was still on

11   parole and subsequently arresting the prisoner was objectively reasonable; officer was entitled to

12   qualified immunity). Further, the Court finds that it was reasonable for defendant Kiser, having

13   determined plaintiff was still restrained under community custody, to arrest him for violations of

14   that community custody, namely failing to report. *See Sherman v. U.S. Parole Com'n*, 501 F.3d

15   869, 884 (9th Cir. 2007) (noting that "'if a parole officer reasonably believes a parolee is in

16   violation of his parole, the officer may arrest the parolee'") (quoting *United States v. Rabb*, 752

17   F.2d 1320, 1324 (9th Cir. 1984)).

18          Plaintiff argues that he told defendant Kiser his community custody was over when

19   plaintiff was being arrested. However, the Court finds that the protestations from an apparent

20   parolee under arrest, who had been instructed to and failed to report to his community custody

21   officer, does not make reliance on the other information accessible to defendant Kiser

22   unreasonable.

23

24

1    Plaintiff argues further it was unreasonable for defendant Kiser to believe plaintiff was

2  still on community custody because his judgment and sentence clearly said he was only

3  sentenced to 12 months of community custody. Dkt. 69, p. 6. Plaintiff argues that, because

4  August of 2015 was 12 months after his release to community custody, it was impossible for

5  defendant Kiser to "reasonably assume that [plaintiff] failed to report as required by [his]

6  judgment and sentence . . . ." *Id*. Defendants respond, however, that Washington's rules

7  surrounding community custody are not as clear as this "12 months is 12 months" argument.

8  Dkt. 72, p. 5. Rather, during plaintiff's term of community custody, the Washington State

9  Supreme Court rendered an opinion in *State v. Bruch*, 182 Wash.2d 854 (2015), which changed

10  the way DOC imposed its community custody in lieu of early release. In that case, the

11  Washington Supreme Court explained that there are two types of community custody in

12  Washington: community custody imposed by the trial court pursuant to RCW 9.94A.701; and

13  community custody in lieu of early release, provided by the DOC pursuant to RCW 9.94A.729.

14  *See id*. at 857. The Washington Supreme Court noted that "[t]he statutory scheme contemplates

15  that an offender might serve more time in community custody than imposed by the sentencing

16  court under RCW 9.94A.701 if he earns early release pursuant to RCW 9.94A.729." *Id*. The

17  Court finds that plaintiff's judgment and sentence, sentencing him to 12 months community

18  custody, read in light of the *Bruch* opinion, did not make it unreasonable for defendant Kiser to

19  believe that plaintiff's community custody had been extended, particularly in light of the fact that

20  the OMNI entry amending plaintiff's community custody sentence directly references that case.

21  *See* Dkt. 59-1, p. 7.

22    Thus, the Court concludes that affecting an arrest of a person who an officer reasonably

23  believes is on community custody and has violated their conditions of community custody by

24

1   failing to report, even if the person is no longer under supervision, is not a clearly established

2   violation of the Fourth Amendment for which the officer may be held liable. Therefore, the

3   Court finds that defendant Kiser is entitled to qualified immunity as to plaintiff's Fourth

4   Amendment arrest claim and the Court recommends that defendants' motion be granted as to that

5   claim.

6      *C. Unreasonable Search*

7        Plaintiff argues that his Fourth Amendment rights were also violated when defendant

8   Kiser searched his apartment based on an alleged violation of his conditions of community

9   custody after plaintiff's community custody had expired. As noted above, the Court need not

10   determine whether plaintiff's community custody had in fact expired. Rather, assuming for

11   purposes of this motion that plaintiff's community custody term had expired, the Court must

12   determine whether the information upon which defendant Kiser allegedly mistakenly acted

13   entitles him to qualified immunity.

14        As the Court has already determined in section III(B)(2) *supra*, it was objectively

15   reasonable under the circumstances for defendant Kiser to act under the impression that plaintiff

16   was still restrained pursuant to his conditions of community custody. The Court must then

17   determine whether defendant's actions, based on the allegedly mistaken assumption, were

18   objectively reasonable.

19        Plaintiff's community custody conditions contain the provision that plaintiff could be

20   "subject to search and seizure of [his] person, residence, automobile, or other personal property

21   if there is reasonable cause on the part of the Department of Corrections to believe that [he has]

22   violated the [cond]itions/requirements or instructions" pertaining to his community custody. Dkt.

23   59-1, pp. 18-19. Defendant Kiser has stated that, during plaintiff's arrest on September 25, 2015,

24

1   plaintiff admitted to smoking methamphetamine. Dkt. 59, Kiser Decl., ¶ 24. Plaintiff has not

2   disputed this assertion. *See* Dkt. 69. Because of this statement, defendant Kiser "conducted a

3   search of [plaintiff's] house and found a clear plastic bag with two crystal-like substances." *Id*.

4         The Court finds that defendant Kiser's actions in searching plaintiff's home were

5   objectively reasonable. One of the conditions of plaintiff's community custody was not to

6   "use/possess/consume any controlled substances without a lawfully issued prescription." Dkt.

7   59-1, p. 17. Plaintiff had admitted to defendant Kiser that he had used methamphetamine while

8   on community custody, and thus admitted that he had violated his conditions of community

9   custody. Pursuant to Washington statute, if an officer has "reasonable cause to believe" that an

10  offender has violated his conditions of community custody, the officer "may require an offender

11  to submit to a search and seizure of the offender's person, residence, automobile, or other

12  personal property." RCW 9.94A.631(1). Here, even beyond reasonable cause, defendant Kiser

13  had an admission from plaintiff that plaintiff had violated his conditions of community custody.

14  Thus, based on plaintiff's admission that he had violated his conditions of community custody by

15  using methamphetamine, the Court finds that defendant Kiser's decision to search plaintiff's

16  residence was objectively reasonable under the circumstances. *See United States v. Davis*, 508

17  Fed. App'x 606, 607 (9th Cir. 2013) (noting a search pursuant to a local valid state regulation,

18  such as RCW 9.94A.631(1), satisfies the Fourth Amendment's reasonableness standard).

19        Thus, the Court concludes that searching the residence of a person who an officer

20  reasonably believes is under community custody after the person has admitted to violating their

21  conditions of community custody is not a clearly established violation of the Fourth Amendment.

22  Therefore, the Court finds defendant Kiser is entitled to qualified immunity as to plaintiff's

23  Fourth Amendment search claim and recommends defendants motion be granted as to that claim.

24

1

## IV.    Eighth Amendment Deliberate Indifference

2        To establish a constitutional violation under the Eighth Amendment due to inadequate

3    medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious

4    medical need."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hudson v. McMillian*, 503 U.S. 1, 9

5    (1992). A determination of deliberate indifference involves an examination of two elements: the

6    seriousness of the prisoner's medical need and the nature of the defendant's response to that

7    need.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by*

8    *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  First, a "serious medical

9    need" exists if the failure to treat a prisoner's condition would result in further significant injury

10    or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency.

11    *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059.  Second, the indifference

12    to medical needs must be substantial; a constitutional violation is not established by negligence

13    or "an inadvertent failure to provide adequate medical care."  *Estelle*, 429 U.S. at 105-06;

14    *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Officials violate their obligation by

15    "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104-05. There is

16    no violation of the Eighth Amendment unless the defendant "knows of and disregards an

17    excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "In

18    order to know of excessive risk, it is not enough that the person merely 'be aware of facts from

19    which the inference could be drawn that a substantial risk of serious harm exists, [ ] *he must also*

20    *draw that inference*.'" *Gibson v. C'nty of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002)

21    (quoting *Farmer*, 511 U.S. at 837) (emphasis added).

22        Plaintiff alleges his Eighth Amendment rights were violated when defendant Kiser failed

23    to provide him with his medical prescriptions when placing him in jail after his September 25,

24

1    2015 arrest. Plaintiff has provided evidence that defendant Kiser knew plaintiff was on

2    medication "as he has gathered them up for [plaintiff] while taking [him] into custody on an

3    unrelated violation several months prior." Dkt. 23, p. 3. He states that defendant Kiser informed

4    plaintiff that he would bring plaintiff's medications after plaintiff had been placed in jail, but

5    they never arrived. *Id*. Plaintiff asked non-parties Lowry and Tyler to contact defendant Kiser to

6    find out when his medications would arrive, but "[defendant Kiser] never showed up and that

7    caused [plaintiff] to go [through] the very painful withdraw[a]ls from the psyc[h]otropics and the

8    panic attacks from not having [plaintiff's] blood pressure pills." *Id*. In addition, plaintiff has

9    included argument in his unsworn response that defendant Kiser's deliberate indifference

10   "started when he deliberately kept the illegal addition of community custody time from

11   [plaintiff]." Dkt. 69, p. 7. Plaintiff has not provided evidence indicating defendant Kiser knew

12   what medications plaintiff was taking or what the effect of being denied those medications would

13   be.

14       Defendants have provided evidence that plaintiff did not ask defendant Kiser for his

15   medications during his September 25, 2015 arrest. Dkt. 59, p. 5. They argue that, even if

16   defendant Kiser knew that plaintiff was on medications or even if plaintiff had requested his

17   medications, that alone is insufficient to show deliberate indifference because plaintiff has

18   provided no evidence that defendant Kiser knew that failure to provide medications would

19   jeopardize plaintiff's health or safety. Dkt. 57, p. 16 (citing *McGarvey v. Biswell*, 992 F. Supp.

20   1198, 1203 (C.D. Ill. 1998)).

21       Here, plaintiff has failed to show that defendant Kiser acted with deliberate indifference

22   to plaintiff's serious medical need. For purposes of this motion, the Court assumes that access to

23   plaintiff's mental health and high blood pressure medications constitute a serious medical need.

24

1    However, even assuming defendant Kiser knew plaintiff was taking medications, plaintiff has

2    provided no evidence that defendant Kiser knew what medications plaintiff was taking or knew

3    that plaintiff's failure to take the medications would lead to painful withdrawals or panic attacks.

4    Thus, plaintiff has not shown that defendant Kiser knew of, yet disregarded, plaintiff's serious

5    medical need. Even reading the facts in the light most favorable to plaintiff, plaintiff has at best

6    provided evidence that defendant Kiser knew at some point that plaintiff had been taking

7    medications, that defendant Kiser neglected to transport those medications when he arrested

8    plaintiff, and that defendant Kiser subsequently booked plaintiff into a jail with access to full

9    medical treatment. Even if defendant Kiser knew of plaintiff's medications and neglected to

10   provide them, that constitutes at most negligence, which is insufficient to show deliberate

11   indifference. *See Farmer*, 511 U.S. at 839.

12        Defendant's reference to *McGarvey v. Biswell*, 992 F. Supp. 1198 (C.D. Ill. Feb. 20,

13   1998), is persuasive. In that case, an arrestee requested his breathing medication but was denied

14   access to it by arresting officers. *Id*. at 1203. However, that court found the arrestee had not

15   provided evidence that defendants were aware inability to access the arrestee's medication would

16   pose an excessive risk to the arrestee's health. *Id*. To the contrary, that court found that

17   defendants had provided evidence that they were unaware of any serious medical risks. *Id*.

18   Similarly, here, plaintiff has alleged defendant Kiser failed to provide his medications when he

19   transported plaintiff to jail. However, the Court finds plaintiff has not shown defendant Kiser

20   was aware of an excessive risk to plaintiff's health or that he ignored that excessive risk. Plaintiff

21   has failed to show defendant Kiser acted with deliberate indifferent toward an excessive risk to

22   plaintiff's health.

23

24

1    Thus, plaintiff has failed to show defendant Kiser violated his Eighth Amendment

2    protections. Therefore, the Court recommends defendants' motion be granted as to this claim.

3                                                      **CONCLUSION**

4    For the reasons set forth above, the Court recommends that defendants' motion (Dkt. 57)

5    be granted and plaintiff's claims against defendants Perry and Kiser be dismissed. The Court will

6    address the claims against defendant Hergert and make a determination on defendant Hergert's

7    motion for summary judgment in a separate report and recommendation.

8    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

9    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

10   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

11   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

12   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

13   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

14   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 18,**

15   **2019** as noted in the caption.

16   Dated this 28th day of December, 2018.

17

18

19

20   J. Richard Creatura
     United States Magistrate Judge

21

22

23

24